UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RAILYARD COMPANY, LLC,                                  Case No. 15-12386 t11

Debtor.

## OPINION

Before the Court is the chapter 11 trustee's motion to sell certain bowling equipment free and clear of interests for $44,000. Messrs. Steve Duran and Rick Jaramillo (together, the "Objectors") objected, for a variety of reasons. After a trial of this contested matter, the Court finds that the proposed sale is fair and reasonable, and in the best interests of the estate. The Court therefore will grant the motion and overrule the objections.

I.     FACTS

1.     Railyard Company Transactions and Property.

Railyard Company, LLC ("Debtor"), a New Mexico limited liability company formed in 2004, constructed and operates a two story, multi-tenant building (the "Railyard") at the rail station near downtown Santa Fe, New Mexico. Steve Duran, David Duran, and Rick Jaramillo are the principal members of Debtor.

Market Station Railway Properties, LLC ("Original Lender") loaned Railyard Co. approximately $13,799,646 on about April 29, 2008. The Original Lender obtained a first mortgage on Debtor's interest in the Railyard. David Duran, Steve Duran, Rick Jaramillo, and Elaine Duran guaranteed payment of the loan.

Debtor had a dispute with the City of Santa Fe. As part of settling the dispute, Debtor sold a condominium unit of the Railyard to the city (the "Santa Fe Condo"). The purchase price was $3,600,000.

The Santa Fe Condo sale is reflected in a May 2012 forbearance agreement among Original Lender, Debtor, and the guarantors. As part of the forbearance agreement, $1,000,000 of the sale proceeds was paid to Original Lender to reduce the loan principal balance. About $2,000,000 was to go into an escrow account for tenant improvements at the Railyard. Original Lender also reduced the loan balance by about $6,000,000, in exchange for a 19% membership interest in Debtor.

$1,860,498.41 from the sale of the Santa Fe Condo was deposited into Debtor's bank account at the Bank of Albuquerque on or about November 21, 2012. Before this deposit, the account balance was zero.

Ringside, LLC is a New Mexico limited liability company. Ringside's members included Rick Jaramillo, Steven Duran, Gary Skidmore, and Allen Branch.

On or about October 8, 2012, Ringside signed a lease with Debtor for about 17,500 square feet of space on the second floor of the Railyard (the "Bowling Center Space"). Ringside intended to operate a combination restaurant, bar, and eight lane bowling center.

US Bowling Corporation designs, manufactures, and installs bowling equipment. On or about October 8, 2012, Ringside signed a contract with US Bowling to purchase eight bowling lanes and related pinspotters, lifts, furniture, scoring equipment, and other equipment (together, the "Bowling Equipment"). The contract price was about $320,000.

From its Bank of Albuquerque account, Debtor made four payments for the Bowling Equipment to US Bowling:

$89,590 on November 30, 2012
$104,522 on March 25, 2013
$97,480 on August 6, 2013
$10,739 on August 7, 2013.

To refinance the loan from Original Lender, in December, 2014 Debtor obtained a $9,670,000 loan from Thorofoare Asset Based Lending Fund, III ("Thorofare"). Steve Duran and Southwest Structural Services made a $545,000 capital contribution to Debtor as part of the refinancing. Approximately $520,000 of the new loan proceeds was held in escrow by Thorofare to fund tenant improvements.

On March 27, 2015, Debtor paid US Bowling $18,432 for the Bowling Equipment from the Thorofare escrow fund.

At some point Ringside abandoned the project and left Debtor without a tenant for the Bowling Center Space. The Court has no evidence about what caused the parting of the ways. The Court does have evidence, however, that Steve Duran, Rick Jaramillo, and David Duran formed Railyard Brewing Company, LLC, a New Mexico limited liability company ("Railyard Brewing"). On January 30, 2014, Railyard Brewing signed a lease for, inter alia, the Bowling Center Space. Railyard Brewing proposed to take over the project and operate the restaurant, bar, and bowling center. Railyard Brewing spent considerable time and money getting the Bowling Center Space ready to operate, but the center never opened for business. Railyard Brewing never paid rent under its lease. There is no evidence Railyard Brewing spent any money on the Bowling Equipment.

Debtor filed this chapter 11 case on September 4, 2015. The Court (Hon. Robert H. Jacobvitz) appointed a chapter 11 trustee on March 30, 2016. On December 2, 2016, the Court entered an order granting the trustee's motion to reject Railyard Brewing's lease.

Debtor's bankruptcy schedule B, filed September 4, 2015, and amended on October 7, 2015, shows that Debtor owns the Bowling Equipment. Mr. Jaramillo signed the schedules under penalty of perjury.    2.    Sale and Marketing of Bowling Equipment.

A fundamental problem with the bowling center concept is that Debtor's anchor tenant, REI, as well as the City of Santa Fe, both object strenuously to bowling at the Railyard. They are very concerned about the noise and vibration caused by bowling. After his appointment, the trustee hired an engineer to determine whether the bowling noise could be attenuated enough to allow the bowling center to co-exist with REI, the City, and other Railyard tenants. The expert conducted a number of tests and examined the building and the bowling center. He concluded that it would be very expensive to attenuate the sound and that the results, even after spending several hundred thousand dollars, would be uncertain. Because of the building's steel frame and the location of the bowling center, the expert was skeptical that any reasonable sound attenuation efforts would be successful.

Based in large part on his expert's advice, the trustee concluded that it would be better for the estate to abandon the bowling concept. He therefore decided to sell the Bowling Equipment and re-let the Bowling Center Space to a tenant that would not operate a bowling center.[1]

In February, 2017, the trustee contacted Ken Mischel, a broker specializing in the sale of bowling lanes and equipment. Mr. Mischel's normal brokerage fee for selling used bowling equipment is the greater of 12% of the sales price or $12,000.

---

[1] The trustee testified that his real estate broker believes that the highest and best use of Suite 210 is as office space. Objectors question this. In their opinion, there is a glut of office space in Santa Fe, and not enough family entertainment. In the Court's view, the trustee's decision to abandon the bowling concept does not foreclose the use of Suite 210 for some other type of entertainment venue, if it turns out that Objectors are correct.

-4-

Generally, second hand bowling equipment sells for a small fraction of its original cost. Used bowling equipment for eight lanes might sell for $4,000 to $8,000. Mr. Mischel offered to buy the Bowling Equipment for $4,000. His price was so low in part because it will be difficult and expensive to remove the Bowling Equipment from the second floor of the Railyard (the estimated removal cost is $20,000). Furthermore, Mr. Mischel would have to pay to store the equipment while he marketed it. Mr. Mischel opined that the trustee would be lucky to get a bid of $40,000 to $50,000 for the Bowling Equipment.

On February 28, 2017, the trustee signed a contract with US Bowling to sell the Bowling Equipment back to US Bowling for $44,000. Under the contract, US Bowling would pay for the cost of removing the equipment. There are no brokerage commissions. Mr. Mischel opined that US Bowling's proposed terms are fair and reasonable to the estate.

On March 22, 2017, the trustee filed a motion to approve the proposed sale of the Bowling Equipment to US Bowling.

## II.     DISCUSSION

A.     Standards for Approving a Chapter 7 trustee Sale under § 363(b).

1.     The Business Judgment Test. In determining whether to approve a § 363(b) sale, the "business judgment" test applies. *In re Allen*, 607 Fed. App'x 840, 843 (10th Cir. 2015). The test requires the trustee to articulate "sound business reasons for the terms of the proposed sale." *In re Castre, Inc*., 312 B.R. 426, 428 (Bankr. D. Co. 2004). The trustee's business decision is entitled to deference from the court, as long as the burden of giving sound business reasons is met. *Id, citing In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 514 (Bank. N.D. Ala. 2002).

Factors courts consider in determining whether a proposed sale falls within the "business judgment rule" include:

1. Does the proposed sale involve any improper or bad motive?
2. Is the price fair and reasonable?
3. Did the negotiations occur at arm's length?
4. Was the property adequately exposed to the market?
5. Was the notice of the sale motion adequate and accurate?

*In re Castre, Inc.*, 312 B.R. at 428, *cited in In re Allen,* 607 Fed. App'x 840, 843 (10th Cir. 2015); *In re Premier Concrete*, *LLC*, 2010 WL 1780046 (Bankr. D.N.M.) (Jacobvitz, J.). Most of these factors address "process" issues rather than "business rationale." *In re Castre*, 312 B.R. at 428.

In determining whether the trustee's business judgment is sound, the Court weighs the relevant factors as follows:

| Factor | Discussion |
|---|---|
|  |  |
| Improper motive? | No. The trustee, in his business judgment, determined that a bowling alley should not be operated on the second floor. The trustee hired an engineering expert to help him form that opinion. There is no "improper motive" in his conclusion to abandon the bowling concept, or in selling the Bowling Equipment. |
| Is the price fair and reasonable? | Yes. The price appears to be at or above the market for such used bowling equipment. Although the cost for purchasing and installing the equipment was over $320,000, that is not an indication of its current value. Other offers appeared to be between $4k to $8k, and Mr. Mischel opined that $44,000 was a good price. $44,000 is the highest and best offer received. Moreover, US Bowling agreed to pay the cost to remove the bowling equipment, which saved the estate about $20,000. |
| Arm's length negotiation? | Yes. There is no pre-existing relationship between the trustee and US Bowling. The Objectors did not allege otherwise. |
| Property adequately exposed to market? | Yes. It appears the trustee began seeking buyers in February, 2017. The purchase and sale agreement with US Bowling was signed on February 28, 2017. The trustee found a broker who specializes in selling bowling equipment. Ultimately, he sold the bowling equipment to the equipment's manufacturer, |

| | who had other buyers interested in the equipment. Because the price is at or above Mr. Mischel's estimate of value, there is little reason to believe that further marketing would result in a higher net sale. |
|---|---|
| Notice of sale motion adequate? | Yes. Ringside, Objectors, Railyard Brewing, Debtor, and Allen Branch all received notice. |

The factors weigh in favor of granting the motion. The Court concludes that the trustee's business judgment in these related matters is sound.

        2.      <u>Ownership of the Bowling Equipment</u>. Objectors argued at trial that the motion to sell should be denied because they, rather than Debtor, owned the Bowling Equipment. The Court overrules this argument. Debtor paid for the Bowling Equipment, not Objectors.[2] Debtor listed the Bowling Equipment on its schedules, which Mr. Jaramillo signed under penalty of perjury. Ringside has not asserted any interest in the Bowling Equipment, although it received adequate notice of the motion. The evidence before the Court shows that the Bowling Equipment is owned by the Debtor.[3]

Objectors seem to argue that it was their money, not Debtor's money, in the Bank of Albuquerque and Thorofare escrow accounts. The loan and bank documents do not support their position.

The most that can be said is that Objectors' claimed interest in the Bowling Equipment is in bona fide dispute. As discussed below, that allows the trustee to sell the equipment free of the

---

[2] Debtor is a New Mexico limited liability company. Under New Mexico law, if property is acquired with funds of a limited liability company, it is presumed to be property of the company. NMSA 1978, § 53-19-29(E). Property owned by a limited liability company is its property, not its members. § 53-19-29(A).

[3] In addition, the Court takes judicial notice of Ringside's lease, which is attached to Ringside's proof of claim. The lease is not in evidence and is not a basis for this ruling, but the lease terms are consistent with the Court's finding that Debtor paid for and owns the Bowling Equipment.

Objectors' claimed interest. The Court overrules the Objectors' argument that their asserted ownership interest in the Bowling Equipment is grounds to deny the motion to sell.

   3. <u>Estate Claims against US Bowling</u>. The Objectors further argue that Debtor has a claim against US Bowling for negligent installation of the Bowling Equipment. If so, the proposed sale would have no effect on the claim. There is no release language in the contract. The existence of such claims, if they have merit, is not a reason to deny the motion to sell.

  C. <u>Sale Free and Clear of Interests</u>.

Section 363(f)(4) allows the trustee to sell property free and clear of any interest if that interest is in bona fide dispute. The trustee bears the burden of showing that a bona fide dispute exists. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002). An interest is in bona fide dispute when there is an "objective basis for ... a … legal dispute as to the validity" of the interest." *In re Mundy Ranch, Inc.*, 484 B.R. 416, 423 (Bankr. D.N.M. 2012), *quoting In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996), *and In re Nicole Energy Services, Inc.*, 385 B.R. 201, 229 (Bankr. S.D. Ohio 2008). "The court is not required to determine the underlying dispute or determine the probable outcome, rather only that a dispute does in fact exist." *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002). The Court also concludes the Bowling Equipment should be sold free and clear of all interests, as provided for under § 363(f).

   1. <u>Thorofare Consents</u>. Thorofare consents to the sale of the Bowling Equipment free and clear of Thorofare's asserted lien. *See* § 363(f)(2).

   2. <u>Objectors' Interests are in Bona Fide Dispute</u>. Objectors assert that "all equipment, bowling equipment, and Tenant Improvements have a UCC lien filed with the Secretary of State of New Mexico against them in favor of Railyard Brewing Company and its

members and investors . . . ." The sole document they submitted in support of this assertion is a financing statement filed on April 8, 2016, which shows Railyard Brewing as the debtor and "Zack Vigil c/o & Railyard Brewing Company LLC" as the secured party. The list of collateral includes the Bowling Equipment. This evidence is insufficient because (i) the financing statement shows Railyard Brewing as both debtor and secured party; (ii) there is no evidence of a security agreement; and (iii) there is no evidence of a debt.

Moreover, to the extent the financing statement purports to perfect a security interest in Debtor's pre-petition property, it was filed post-petition and is void. *See, e.g., In re Veazey*, 272 B.R. 486 (Bankr. D. Kan. 2002) (under § 362(a)(4), any attempt to perfect lien post-petition violated automatic stay and is void).

Apart from the UCC financing statement, there is no evidence that Railyard Brewing or the Objectors have a lien or security interest in the Bowling Equipment. *See* § 363(p) ("in any hearing under this section… the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.").

As discussed above, the Objectors also assert an ownership interest in the Bowling Equipment. That doubtful assertion is, at a minimum, in bona fide dispute. The proposal to sell the Bowling Equipment free of the interest therefore is appropriate.

      3.    <u>Railyard Brewing's Interest is in Bona Fide Dispute</u>. Railyard Brewing did not object to the motion to sell and did not participate in the trial. Objectors cannot directly or indirectly argue Railyard Brewing's position for it. A limited liability company may only appear in court through its attorneys. *Rowland v. California Men's Colony,* 506 U.S. 194, 201–202 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel."); *see also Doherty v. American Motors Corp.,* 728

-9-
Case 15-12386-t11    Doc 629    Filed 06/14/17    Entered 06/14/17 10:51:45 Page 9 of 11

F.2d 334, 340 (6th Cir. 1984); *In re ICLNDS Notes Acquisition, LLC* 259 B.R. 289, 293 (Bankr. N.D. Ohio 2001) (limited liability company may only appear in court through an attorney).

Because Railyard Brewing did not object, the trustee may sell Bowling Equipment sold free and clear of any interest of Railyard Brewing.

    D.    <u>Liens to Attach to Proceeds</u>.

To the extent of the validity of any asserted interest, it attaches to the proceeds of a § 363(f) sale. 3 Collier on Bankruptcy, ¶ 363.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). *See also In re Burd*, 202 B.R. 590, 594 (Bankr. N.D. Ohio 1996) (before entering order for distribution of sale proceeds, court required adversary required to litigate validity of lien), *citing In re Collins*, 180 B.R. 447, 449 (Bankr. E.D. Va. 1995) (court would not take up validity of liens in a § 363(f) contested matter; adversary proceeding required).

Per the trustee's requested relief and proposed form of order, the asserted interests of Thorofare, Railyard Brewing, and the Objectors shall attach to the sales proceeds, to the same extent they attached to the Bowling Equipment, and subject to the same defenses. Any issues related to the validity of the interests can be decided later, in an adversary proceeding. *See* Fed. R. Bank. P. 7001(2); *In re Kinion*, 207 F.3d 751, 757 (5th Cir. 2000); *In re E-Z Serve Convenience Stores, Inc.*, 318 B.R. 631 (M.D.N.C. 2004).

    E.    <u>Good Faith Purchaser</u>.

The Court rules that US Bowling is a good faith purchaser pursuant to § 363(m). The sale was negotiated at arms-length, US Bowling is not related to, or holds an interest in, the Debtor, and there was no evidence of fraud or collusion between the trustee and US Bowling.

    F.    <u>Stay of Order Pursuant to Fed. R. Bank. P. 6004(h).</u>

The sale is not stayed, as provided in Fed. R. Bank. P. 6004(h).

III. <u>CONCLUSION</u>

When appointed, one of the trustee's first thorny problems was the bowling center, the anticipation of which caused REI and the City much concern and unhappiness. The trustee hired a qualified expert and eventually concluded that operating a bowling alley on the second floor of the Railyard was a bad idea. The members disagree with this conclusion, but the Court has no problem finding that the trustee's decision to walk away from the bowling concept was within his sound business judgment. Once that decision was made, the follow-on decision to sell the Bowling Equipment was easy, and the evidence shows that the proposed sales terms benefit the estate.

The trustee's counsel is directed to submit for entry a proposed form of order consistent with this this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 14, 2017

Copies to:

All case participants listed in CM/ECF