

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: RAILYARD COMPANY, LLC
a New Mexico Limited Liability Company,
Debtor.

Case No. 15-12386-t11

### ORDER APPROVING CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: (A) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF COMMERCIAL LEASES AND ASSIGNMENT OF GROUND LEASE; (C) APPROVING MARKETING PLAN (D) APPROVING SALE PROCEDURES; AND (E) SETTING AUCTION DATE FOR SALE OF ESTATE ASSETS

This matter came before the Court at the hearing on August 24, 2017 upon Chapter 11 Trustee Craig H. Dill's (the "Trustee") Motion for Order: (A) Authorizing Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances, (B) Authorizing Assumption and Assignment of Commercial Leases and Assignment of Ground Lease; (C) Approving Marketing Plan (D) Approving Sale Procedures; and (E) Setting Auction Date for Sale of Estate Assets, filed June 27, 2017 as Doc. No. 644 (the "Motion"), Recreational Equipment, Inc.'s ("REI") Objection to the Motion, filed July 15, 2017 as Doc. No. 661 (the "REI Objection"), and Rick Jaramillo's, Steve Duran's, and David Duran's (together, the "Members") Objections to the Motion filed on July 24,

2017 as Dos. No. 665, 666, and 667, respectively (together, the "Members' Objections"). Appearing at the hearing were Thomas D. Walker for the Trustee, Charlie Hughson for REI, Ben Thomas for Thorofare Asset Based Lending Fund III, L.P. ("Thorofare"), Rick Jaramillo, *pro se*, Steve Duran, *pro se,* and David Duran, *pro se*.

The Court, having reviewed the record, considered the Motion, the Members Objections, heard the arguments of counsel and *pro se* objecting parties, and being sufficiently advised, FINDS:

1. The Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(N).

2. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3. On September 4, 2015 (the "Petition Date"), Railyard Company, LLC (the "Debtor") commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;

4. On July 13, 2016, the Court entered an order approving the appointment of Craig H. Dill as Trustee (Doc. No. 308);

5. On June 27, 2017, the Trustee filed the Motion.

6. On June 28, 2017, Trustee filed and served Notice of Deadline to Object to the Motion (Doc. No. 647) (the "Notice"), via the Court's case management and electronic filing system for the transmission of notices, as authorized by Fed. R. Civ. P. 5(b)(3) and NM LBR 9036-1 on all parties entitled to receive electronic filings and otherwise by mail, first-class, postage prepaid as shown on the certificate of service that is part of the Notice.

7. The Notice specified an objection deadline of 21 days from the date of service, to which three days was added under Fed. R. Bankr. P. 9006(f).

8. The Notice was sufficient in form and content.

9. The only objections timely filed were the REI Objection and the Members Objections.

10. There is a dispute between REI and the Estate regarding certain alleged prepetition defaults under the REI Lease (defined below).

11. As shown on by the signature of its counsel below, the REI Objection is resolved with the exceptions of the cure, assumption, and assignment issues reserved in Section G, below.

12. The Members' Objections are overruled.

13. The primary assets (the "Assets") of the Estate consist of the following:

    A. An Amended and Restated Ground Lease (the "Ground Lease") dated October 1, 2007 between Santa Fe Railyard Community Corporation, a New Mexico non-profit corporation ("SFRCC"), as ground lessor, and the Debtor, as ground lessee. The Ground Lease has been assumed by the Estate (See Doc. No. 438);

    B. Condominium Units 1, 3, and 4 located at 500 Market Street, Santa Fe, New Mexico (together with the Ground Lease, the "Real Property");

    C. Certain furniture, fixtures, and equipment owned by the Estate and located at 500 Market Street, Santa Fe, New Mexico; and

    D. Unexpired commercial subleases between the Debtor and Recreational Equipment, Inc. (the "REI Lease"); Go Wireless, Inc. (the "Go Wireless Lease"); and Daniella's Closet, Inc. (the "Daniella Lease") (together, the "Commercial Leases").

14. There are no defaults under the Ground Lease, the Go Wireless Lease, or the Daniella Lease and such leases are assumable and assignable under §365 of the Bankruptcy Code.

15. The Debtor's largest creditor, Thorofare Asset Based Lending Fund III, L.P. ("Thorofare") has a claim secured by the Assets pursuant to a Leasehold Mortgage and Security

Agreement executed by Debtor in favor of the original lender, Market Station Railway Properties, LLC, recorded on May 1, 2008 in the real property records of Santa Fe County, New Mexico as Instrument No. 1524276, and assigned to Thorofare on December 4, 2014 by Debtor's Assignment of Leasehold Mortgage, recorded on December 15, 2014 in the real property records of Santa Fe County, New Mexico as Instrument No. 1753012 (the "Mortgage").[1]

16. As of June 20, 2017, Thorofare has asserted that the outstanding principal balance of its loan, secured by the Mortgage, is $9,215,228.63, plus accrued but unpaid interest of $1,632,270.58 at the non-default rate of 10.0%; plus accrued but unpaid interest of $1,330,247.78 at the default rate of an additional 7.0%; an exit fee in the amount of $563,546.94; late charges in the amount of $16,116.66; attorneys' fees and servicer expenses in the amount of $698,007.82; plus interest as it continues to accrue at $2,477.21 per diem at the non-default rate and $1,734.05 per diem at the default rate for a total per diem of $4,211.26 (the "Thorofare Debt"). *See also* Thorofare's Proof of Claim, Claim No. 9, filed on December 11, 2015.

17. On May 26, 2017, the Trustee filed an application (the "Employment Application") to employ Barker Realty, LLC ("Barker") and NMREA, Inc. d/b/a Colliers International ("Colliers") (together, the "Brokers") as sales brokers for the Assets pursuant to the terms of the exclusive right to sell listing agreement (the "Listing Agreement") attached to the Employment Application. *See* Doc No. 608.

18. The Court entered an order approving the Employment Application and Listing Agreement on July 12, 2017. See Doc. No. 657.

19. The sale of the Assets is outside the ordinary course of the Debtor's business.

20. There is sufficient evidence to support the Trustee's business judgment that the sale

---

[1] The other alleged secured creditor, which is junior to Thorofare, is Sommer, Udall, Sutin, Hardwick & Hyatt, P.A. for an attorneys' lien in the amount of $132,899.78. *See* Claim No. 5, filed on October 6, 2015. No other secured party has filed a proof of claim in this case and no liens of record have priority to Thorofare's Mortgage.

of the Assets in accordance with the Marketing Plan and Sale Procedures approved herein will maximize the value of the Estate and is in the best interest of the Estate and creditors.

21. There is sufficient evidence to support the Trustee's business judgment that the assumption of the Commercial Leases and the assignment of the Commercial Leases and assignment of the Ground Lease in accordance with the Sale Procedures approved herein will maximize the value of the Estate and is in the best interest of the Estate and creditors. This finding is without prejudice to the REI Objection.

22. Grounds exist under Section 363(f) of the Bankruptcy Code for a sale of the Assets free and clear of liens, interests, claims and encumbrances

23. The Motion is well taken and should be granted as provided herein.

IT IS THEREFORE ORDERED:

## MARKETING PLAN

A. The Trustee is authorized to implement the following marketing plan (the "Marketing Plan") formulated by the Brokers from the date of filing the Motion through October 20, 2017 (the "Marketing Period"):

1. Brokers will create comprehensive marketing materials for the Assets;

2. Brokers will compile all available due diligence information for the Assets;

3. Brokers will place signs on the Real Property advertising the Assets for sale;

4. Brokers will advertise the Assets on the local listing services;

5. Brokers will market the Assets on Loopnet.com, CCIM.net, the Society of Industrial and Office Realtors website, and the Colliers International networks, as well as a proprietary web site hosted at www.500market.com or www.500MarketSt.com; and

6. Brokers will have all marketing and due diligence materials for the Assets available for download on the proprietary website hosted at www.500market.com or

www.500MarketSt.com.

## SALE PROCEDURES

      B.    The following sale procedures (the "Sale Procedures") are approved:

      1.    <u>Marketing Period</u>. The Trustee is authorized to solicit bids for the sale of the Assets during the Marketing Period.

      2.    <u>Bid Deadline</u>. Bids must be received by the Trustee no later than 4:30 pm, MT, on October 20, 2017 (the "Bid Deadline").

      3.    <u>Bidding Requirements</u>. To be a "Qualified Bidder," a person or entity (a "Potential Bidder") must, on or before the Bid Deadline, deliver to the Trustee the "Bid Materials," which consist of the following:

          a.    An executed confidentiality and non-use agreement with respect to the Assets ("Confidentiality Agreement") in a form substantially similar to the form attached to the Motion as <u>Exhibit A</u>;

          b.    A bid or proposal (a "Bid") to purchase the Assets that:

              i.    contains substantially the same terms and conditions as the form of Asset Purchase Agreement Revised as of August 29, 2017, attached hereto as <u>Exhibit "1"</u>;[2]

              ii.    does not contain financing contingencies of any kind;

              iii.    does not consist of any form of consideration other than cash consideration, payable by wire transfer or immediately available funds to the account or accounts designated in writing by the Trustee;

              iv.    is not retracted or withdrawn in writing to the Trustee on or before the Auction Date (as defined herein);

              v.    has not been otherwise determined by the Trustee to be made in bad faith; and

---

[2] Trustee is directed to file, within one day of entry of this Order, a redline copy of the Asset Purchase Agreement comparing the version attached to the Motion as Exhibit B to the version approved by this Order and attached hereto as Exhibit "1".

6

vi. is accompanied by a clean and a duly executed copy of the Asset Purchase Agreement and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments to and modifications from the Asset Purchase Agreement, which amendments and modifications may not be materially more burdensome to the Estate.

c. Written proof that SFRCC has approved Potential Bidder as an assignee of the Ground Lease;

d. Written proof by the Potential Bidder that it has received debt or equity funding commitments or has available cash sufficient in aggregate to finance the purchase contemplated or has other ability to close the proposed transaction in form and substance satisfactory to the Trustee;

e. Adequate assurance of the Potential Bidder's ability to perform under the Ground Lease and Commercial Leases; and

f. A good faith deposit in the amount of Fifty Thousand dollars ($50,000.00) (the "Good Faith Deposit") payable to the Walker & Associates, P.C. Attorney Trust Account.

4. <u>Stalking Horse Bidder</u>. The Trustee will be authorized, but not required, to enter into a stalking horse agreement ("Stalking Horse Agreement") at any time before the Bid Deadline with a Qualified Bidder for the purpose of establishing a Stalking Horse Bid. In the event that the Trustee enters into a Stalking Horse Agreement, the Trustee shall promptly file a notice with the Court that includes a copy of such agreement, and provide a copy of such agreement to any Potential Bidder upon request. The Stalking Horse Agreement may include an agreement by the Trustee to pay a break-up fee (the "Break-Up Fee") of up to One Percent (1%) of the Successful Bid (as defined below) in the event that: (1) the Stalking Horse Bidder is not in default under the Stalking Horse Agreement, (2) The Stalking Horse Bidder has not terminated its bid prior to the

7

Auction, and (3) the Stalking Horse Bidder is not determined to be the Successful Bidder (as defined below) at the Auction.

5. <u>Opportunity to Cure Defects in Bids</u>. Potential Bidders who submit their Bid Materials no later than 5:00 p.m. MT on October 10, 2017 shall be notified by the Trustee no later than 5:00 p.m. MT on October 16, 2017 whether such Potential Bidder has submitted Bid Materials in an acceptable form, and will have the opportunity to cure any defects before the Bid Deadline.

6. <u>Notification of Qualified Bidder Status.</u> By October 25, 2017, the Trustee shall determine which Bids are deemed to be Qualified Bids and which Potential Bidders are Qualified Bidders and will notify the Qualified Bidders whether any Bids submitted constitute Qualified Bids. Any Bid that is not deemed a Qualified Bid shall not be considered by the Trustee. Thorofare is deemed to be a Qualified Bidder, is exempt from the Good Faith Deposit requirement, and shall be entitled to credit bid (the "Credit Bid") at the Auction as provided in 11 U.S.C. §363(k).

7. <u>Obtaining Due Diligence Access</u>. The Due Diligence Deadline is October 20, 2017. After receipt of an executed Confidentiality Agreement and until the Due Diligence Deadline, the Trustee shall provide each Potential Bidder with reasonable access to the Assets to enable the Potential Bidder to conduct due diligence. The Trustee shall reasonably cooperate with requests for additional information. The Trustee may decline to provide access to the Assets to Potential Bidders who the Trustee, in his reasonable business judgment, determines do not intend in good faith to consummate a purchase of the Assets.

8. <u>Disclosure to Thorofare and REI.</u> Within two days of receipt, Trustee shall provide copies of any Bid Materials to Thorofare and REI, except the Trustee shall not disclose any bid amounts to REI. Thorofare and REI shall maintain the Bid Materials in confidence and

8

will not disclose the Bid Materials to third parties except, in REI's case, for purposes of evaluating the Potential Bidder's ability to satisfy Code § 365(f)(2)(B).

9. <u>Evaluation of Qualified Bids and Identification of Starting Bid.</u> Prior to the Auction, the Trustee shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's judgment, the highest or otherwise best bid (the "Starting Bid"). No later than October 25, 2017, the Trustee shall: (i) notify all Qualified Bidders which Qualified Bid is the Starting Bid and (ii) distribute copies of the Starting Bid and all other Qualified Bids received. The Trustee shall not distribute confidential or financial information submitted pursuant to Paragraph 3(d) herein.

10. <u>Auction Date</u>. The Auction shall commence on November 7, 2017 at 10:00 A.M. MT (the "Auction Date") at the United States Bankruptcy Court, 500 Gold Ave. SW, Albuquerque, NM 87102, or such other time or other place as the Trustee shall timely notify the Qualified Bidders.

11. <u>Auction Procedures</u>. The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

    a. The Qualified Bidders shall appear in person, or through duly-authorized representatives at the Auction, or via telephone with the prior written approval of the Trustee;

    b. Only duly-authorized representatives of each of the Qualified Bidders, the Trustee, the Bidders' and the Trustee's respective advisors, representatives of the United States Trustee's office, and the Brokers are permitted to attend the Auction;

    c. Only Qualified Bidders and their duly authorized representatives shall be entitled to bid at the Auction;

    d. Bidding at the Auction shall begin at the Starting Bid;

9

e. Subsequent bids at the Auction shall be made in minimum increments of $50,000.00;

f. The bidding will be recorded to ensure an accurate record of the bidding at the Auction;

g. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not colluded with any other person with respect to the bidding or the sale; and

h. The Auction shall be governed by such other Auction Procedures as may be announced by the Trustee, after consultation with his advisors, from time to time on the record at the Auction; *provided,* that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court.

12. <u>Acceptance of the Successful Bid</u>. Upon the conclusion of the Auction, the Trustee, in the exercise of his reasonable, good-faith business judgment, and after consulting with his advisors, shall identify the highest or otherwise best bid (the "Successful Bid"). The Qualified Bidder having submitted the Successful Bid will be deemed the "Successful Bidder." The Successful Bidder and the Trustee shall, no later than December 7, 2017, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made.

13. <u>Carve-Out if Thorofare is the Successful Bidder.</u> In the event that Thorofare becomes the Successful Bidder by its Credit Bid, Thorofare shall contribute funds in the amount of $400,000.00, plus other funds in the Estate, including but not limited to Rents, and recoveries from current and former tenants (together, the "Carve-Out") to pay unsecured creditors a fixed amount to be determined by the Court, and to pay the allowed administrative claims for the

10

Trustee's commission, reimbursement of expenses, attorneys' fees, costs of liquidation, taxes, and general administrative costs (the "Allowed Administrative Claims").

14. <u>Sale Hearing</u>. A hearing to consider approval of the Sale of the Assets to the Successful Bidder (the "Sale Hearing") shall be held on November 7, 2017 after the Auction. At the Sale Hearing, the Trustee shall present the Successful Bid to the Bankruptcy Court, and request the entry of an order approving the Successful Bid.

15. <u>Designation of Back-Up Bidder</u>. Upon the conclusion of the Auction and the selection of the Successful Bidder, the Trustee shall select the next highest or otherwise best Qualified Bid, which may be Thorofare's Credit Bid if it exceeds the amount of any other cash bid made at the Auction (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). The Back-Up Bid shall remain open until the earlier of the first Business Day following the closing of a sale of the Acquired Assets to the Successful Bidder. If the Successful Bidder does not timely close, and if Thorofare is the Back-Up Bidder, Thorofare shall be deemed the Successful Bidder and the Trustee shall promptly present it to the Bankruptcy Court. If the Back-Up Bidder other than Thorofare does not timely close, and if Thorofare has submitted a Credit Bid, Thorofare shall be deemed the Successful Bidder. If approved by the Bankruptcy Court, closing shall occur and the Back-Up Bidder shall no later than December 14, 2017, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Back-Up Bid was made.

16. <u>Payment of Break-Up Fee.</u> If there is a Stalking Horse Bid, and the Stalking Horse Bidder is entitled to the Break-Up Fee, the Trustee shall pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, the Break-Up Fee. This payment shall be made within five (5) Business Days after the Auction.

11

17.     Return of Good Faith Deposit. Any Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of substantially all of the Assets, be credited to the purchase price paid for the Assets. If the Successful Bidder fails to consummate the purchase of all of the Acquired Assets, then the Good Faith Deposit shall be forfeited to the Estate. The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within five (5) business days after the Auction, unless the unsuccessful Qualified Bidder is designated as the Back-Up Bidder, in which case the Good Faith Deposit will be returned within five (5) business days after consummation of the sale to the Successful Bidder.

18.     Modification of Sale Procedures. The Trustee may modify these Sale Procedures in any manner that is not inconsistent with any order entered by this Court and that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Sale Procedures, adjourning or cancelling the Auction or adjourning the Sale Hearing in open Bankruptcy Court without further notice, and rejecting any or all Qualified Bids, if, in the Trustee's business judgment the Trustee determines that such Qualified Bid is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (iii) contrary to the best interests of the Estate.

## SALE FREE AND CLEAR OF ALL LIENS

C.     Any sale of the Assets approved at the Sale Hearing will be transferred to the Successful Bidder free and clear of all liens, claims and encumbrances with any such liens, claims and encumbrances to attach to the net sale proceeds with the same validity, priority, force, and effect that such liens, claims and encumbrances had on such assets prior to the closing of the

12

proposed sale.

D. Nothing in this Order shall prejudice the Trustee's right to object to all claims, and to the validity, extent, or priority of any such claims.

### THE SUCCESSFUL BIDDER IS AFFORDED ALL PROTECTIONS UNDER 11 U.S.C. § 363(m) AS A BUYER IN GOOD FAITH

E. Any Successful Bid approved at the Sale Hearing shall be deemed a product of arm's-length negotiations in a competitive sale process, and the Successful Bidder shall be deemed to have purchased the Assets in good faith and be entitled to the full protections of Section 363(m).

### ASSUMPTION AND ASSIGNMENT OF COMMERCIAL LEASES AND ASSIGNMENT OF GROUND LEASE UNDER SECTION 365 OF THE BANKRUPTCY CODE

F. <u>Assumption and Assignment of the Ground Lease and Certain Commercial Leases:</u>

    1. The Go Wireless Lease and the Daniella Lease are hereby assumed by the Estate;

    2. The Trustee is authorized to assign the Ground Lease, the Go Wireless Lease, and the Daniella Lease to the Successful Bidder.

G. <u>REI Lease</u>: The Motion, limited to the extent it requests approval of assumption and assignment of the REI Lease, and the REI Objection, are not resolved or determined by this Order and entry of this Order is without prejudice to the cure and adequate assurance issues raised in the REI Objection and to the Trustee's proposed resolutions of those issues. The Court will set promptly for final hearing (i) the Trustee's Motion to the extent it requests approval of assumption and assignment of the REI Lease, and (ii) the REI Objection to assumption and assignment of the REI Lease.

### END OF ORDER ###

Respectfully submitted,

13

WALKER & ASSOCIATES, P.C.
*/s/ submitted electronically  9/1/17*
Thomas D. Walker
500 Marquette Ave NW, Suite 650
Albuquerque, NM 87102
Telephone: (505) 766-9272
Facsimile: (505) 766-9287
e-mail: twalker@walkerlawpc.com
*Attorney for Trustee Craig H. Dill*

Approved by:

SUTIN, THAYER & BROWNE
A Professional Corporation
By: */s/ Approved August 31, 2017*
Benjamin E. Thomas
Katharine C. Downey
P.O. Box 1945
Albuquerque, NM 87103-1945
Telephone: (505) 883-2500
bet@sutinfirm.com
kcd@sutinfirm.com
*Attorneys for Thorofare*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: /s/ *Approved August 31, 2017*
Charles R. Hughson
Post Office Box 1888
Albuquerque, NM 87103
Telephone: (505) 768-7239
chughson@rodey.com
*Attorneys for REI*

SAMUEL K. CROCKER
United States Trustee


By: */s/ Approved September 1, 2017*
   Alice Page, Esq.
   P. O. Box 608
   Albuquerque, NM 87103
   (505) 248-6544
   alice.n.page@usdoj.gov
Attorney for the United States Trustee



 NOT APPROVED
Rick Jaramillo
215 Calle Roble
Santa Fe, NM 87501
rickxaramillo@yahoo.com
(505) 231-6966

15

_NOT APPROVED_____
Steve Duran
21 Entrada De Duran
Santa Fe, NM 87506
Steveduran.sssi@gmail.com
Six2five4steve@aol.com
(505) 231-6060


_NOT APPROVED____
David Duran
11 West Gutierrez Box 3539
Santa Fe, NM 87504
Davidduran54@gmail.com
(505) 412-0743