UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RAILYARD COMPANY, LLC,                                  Case No. 15-12386 t11

Debtor.

# OPINION

Before the Court is a $6,771,000 proof of claim filed by Railyard Brewing Company, LLC (RBC"), and the chapter 11 trustee's objection thereto. RBC did not retain counsel to respond to the objection. Instead, its members filed a pro se response. As RBC and the members well know, however, limited liability companies must have counsel in contested matters like this one, so the response must be stricken. The claim objection therefore will be sustained by default. Furthermore, the claim is wildly inflated and inadequately documented, and is subject to disallowance in any event.

I.    FACTS[1]

Railyard Company, LLC ("Debtor") was formed in 2004 to construct and operate a multi-unit building ("Market Station") at a rail station near downtown Santa Fe, New Mexico. Debtor's founding members included Richard Jaramillo, Steve Duran, and David Duran. Market Station is built on ground owned by the city and leased or subleased to Debtor.

RBC was formed to own and operate a family-friendly entertainment business at Market Station, which included a restaurant, bar, and eight bowling lanes. Members of RBC are Rick Jaramillo, Steve Duran, David Duran, Zack Vigil, and Raymond Archuleta (the "Members"). RBC is

---

[1] These facts were taken from the docket in this bankruptcy case, all related adversary proceedings, and the Railyard Brewing bankruptcy case, of which the Court takes judicial notice.

a New Mexico limited liability company. On or about January 30, 2014, the Debtor and RBC signed the Railyard Brewing Company LLC Lease (the "Lease").[2]

The Debtor paid for about $1,800,000 of tenant improvements, furniture, fixtures, and equipment that were installed in RBC's Market Station leasehold premises (the "Premises").

To refinance existing debt encumbering Market Station, Railyard obtained a $9,670,000 bridge loan from Thorofare Asset Based Lending Fund, III ("Thorofare") in December 2014. At the time, buildout of the Premises was about half done. Shortly thereafter, Flying Star (a major tenant) filed a chapter 11 bankruptcy case and moved out of Market Station.

Flying Star's closure hurt Debtor's cash flow significantly and caused problems with the Thorofare loan. In June 2015, Thorofare declared the loan in default and stopped releasing funds for tenant improvements. Buildout of the Premises ground to a halt, and the parties became embroiled in litigation.

Debtor filed this chapter 11 case on September 4, 2015. On March 30, 2016, the Court (Hon. Robert H. Jacobvitz) determined there was cause to appoint a chapter 11 trustee. Craig Dill (the "Trustee") was appointed in July 2016.

On August 18, 2016 the Trustee filed a motion to reject the Lease (the "Rejection Motion"). On September 12, 2016, Steve Duran and Rick Jaramillo, as RBC members, filed separate responses to the Rejection Motion. The Trustee objected to RBC proceeding pro se and moved for a default or summary judgment. Twelve days later, RBC hired a lawyer, who responded to the Rejection Motion and opposed default/summary judgment.

---

[2] Railyard and RBC amended the Lease three times: on November 20, 2014; May 1, 2015; and May 30, 2015.

On November 8, 2016 the Court denied the default/summary judgment motion, and set the matter for trial. After taking extensive evidence over two days, the Court determined that the Rejection Motion was well taken and should be granted.

On May 15, 2017, RBC filed a proof of claim for $6,771,000 (the "Claim").[3] Attached to the Claim are RBC's balance sheet; a three year lost profits projection (a one-page spreadsheet, without notes or analysis); and a UCC financing statement showing RBC as the debtor and "Zack Vigil c/o & [RBC]" as the secured party, to which is attached a list furniture, fixtures, and equipment.

On May 25, 2018, the Trustee objected to the Claim (the "Claim Objection"). The Members responded to the Claim Objection on June 27, 2018, purporting to act on their own behalf and for RBC (the "Response"). Attached to the Response is the same UCC financing statement and various quotes or statements for restaurant equipment.

On August 20, 2018, the Court held a preliminary hearing on the Claim Objection. The Members appeared pro se;[4] no counsel appeared for RBC. At the hearing, the Trustee's counsel asked that the Claim Objection be sustained by default because of RBC's failure to obtain counsel.

## II.   DISCUSSION

A.   Only RBC has Standing to Assert and Defend the Claim.

Although the Members apparently take the position that they are claimants along with RBC, the attempt fails.

---

[3] The claimant is described as "Railyard Brewing Company LLC & Members." However, as discussed below, the only colorable claimant is RBC.

[4] The Court ejected one of the Members (Rick Jaramillo) because he refused to state his name for the record, instead repeatedly asking the Court to provide him with documents evidencing proper appointment to the bench. After ignoring a very specific warning, Mr. Jaramillo again flouted the Court's request that he enter his appearance, and therefore was escorted from the Courtroom by Court Security Officers.

1. <u>The Members are Not Parties in Interest</u>. Under the Bankruptcy Code, only a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Although 11 U.S.C. §1109(b) has a broad definition of "party in interest," the phrase is "generally understood to include all persons whose pecuniary interests are, directly affected by the bankruptcy proceedings." *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995). Whether a party has standing to be heard under 11 U.S.C. § 1109(b) depends on whether its has a "sufficient stake in the in the proceeding so as to require representation." *In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *9 (Bankr. D.N.M.), *citing In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir. 1995).

2. <u>The Proof of Claim and Supporting Documents Show that RBC is the Real Party in Interest</u>. The Claim itself shows that only RBC is the creditor. First, only RBC, not its Members, was the lessee under the Lease. Second, the Claim appears to be in part for RBC's lost profits. Third, the Claim attaches RBC's balance sheet. Fourth, the financing statement attached to the claim shows RBC as both debtor and secured party, while only mentioning one of the members (Zack Vigil), acting as RBC's "Chief Operation Officer." Fifth, attached to the Response are a number of quotes, invoices, and statements for restaurant equipment, audio equipment, bar furniture, and the like. All were directed to RBC, not the Members. Sixth, the Members signed the proof of claim as RBC's "attorney or authorized agent." Finally, the signature block shows the Members signing for RBC. Only RBC, not its Members, has a colorable claim against the estate relating to the Lease and/or the Premises.

3. <u>The Members Cannot Assert Claims Based on Alleged Wrongs to RBC</u>. The New Mexico Supreme Court has stated that it "is the general rule of law that one who is not a party to a contract cannot maintain a suit upon it." *Staley v. New*, 56 N.M. 756, 758 (S. Ct. 1952). This rule

derives from the concept that a party is only indirectly injured by a contract to which it lacks privity, and therefore cannot meet the requirement for an injury in fact. *See Marchman v. NCNB Tex. Nat'l Bank*, , 120 N.M. 74, 81 (S. Ct. 1995) ("An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief.").

Under New Mexico law, property that is "transferred or otherwise acquired by a limited liability company is property of the limited liability company and not of the members. A member has no interest in an item of limited liability company property." NMSA § 53-19-29(A).

Here, RBC is the only person or entity with a direct pecuniary interest in the Lease and/or the Premises. The Members have no direct interest in the Claim, so lack standing to defend it.

B. <u>Limited Liability Companies Must be Represented by Counsel</u>.

The Tenth Circuit requires business entities appearing before district courts to be represented by an attorney. *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law."); *See also Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."); *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) ("It has been our long-standing rule that a corporation must be represented by an attorney to appear in federal court.").[5]

---

[5] The rule is explained by *In re O'Connor*, 2009 WL 1616105, at *3 (Bankr. N.D. Ohio):
> Section 1654 of Title 28 of the United States Code provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...." However, an individual's right to have a layperson conduct a case on the individual's behalf is limited by rules prohibiting the unauthorized practice of law. For example, a "venerable common law rule based on the strong state interest in regulating the practice of law" states that a non-lawyer layperson may *not* engage in the unauthorized practice of law by representing another person in court *pro se.*

This requirement is reflected in the local rules for the District Court and this Court. Under the Local Rules for the U.S. District Court for the District of New Mexico, a "corporation, partnership or business entity other than a natural person must be represented by an attorney authorized to practice before this Court." D.N.M.LR-Civ. 83.7. The local rule of this Court is similar: for "all purposes except filing proofs of claims[6], reaffirmation agreements, requests for unclaimed funds or participation in a meeting of creditors, any entity other than an individual, including but not limited to a corporation, limited liability company, partnership, or trust, must be represented by an attorney authorized to practice before this court." NM LBR 1074-1.

The rule clearly applies to limited liability companies. *See Roscoe v. United States*, 134 Fed. App'x 226, 227 (10th Cir. 2005) (unpublished) (a limited liability company cannot proceed pro se in an appeal); *Gallegos v. Tygart*, 2015 WL 13667104, at *2 (D.N.M.) (granting a motion to strike a pro se motion filed by a limited liability company); *Light Tower Rentals, Inc. v. Astoco Oilfield Servs., LLC*, 2013 WL 12335312, at *1 (D.N.M.), adopted, 2013 WL 12334019 (D.N.M.) (striking a pro se answer filed by a limited liability company); *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1221, 1223–24 (D.N.M. 2011) (limited liability companies cannot proceed pro se); *Boeckman v. Dakil*, 2010 WL 11565623, at *1 (N.D. Okla.) (same).

C.  RBC Had Notice of The Requirement to Obtain an Attorney.

RBC has had ample notice of the requirement that it must appear through counsel. On August 18, 2016, the Trustee filed a motion to reject the lease (the "Lease Rejection Motion"). Two of the Members objected to the Lease Rejection Motion on September 12, 2016. On October 14, 2016, the Trustee filed a motion for default or summary judgment, based on RBC's lack of representation. Within two weeks, RBC hired a lawyer, who responded on RBC's behalf to the Lease Rejection

---

[6] Limited liability companies can file claims without an attorney.

-6-
Case 15-12386-t11    Doc 891    Filed 09/12/18    Entered 09/12/18 15:50:02 Page 6 of 12

Motion and the motion for default/summary judgment. Based on RBC obtaining counsel, the Court denied the default/summary judgment.[7]

RBC also attempted to litigate pro se in *Jaramillo v. Frewing*, an action brought in the U.S. District Court for the District of New Mexico. Relying on the legal precedent and local rules cited above, Magistrate Judge Steven Yarbrough opined that although "it is certainly permissible for Plaintiffs Duran and Jaramillo to represent themselves *pro se* in this litigation, under D.N.M.LR-Civ. 83.7, they cannot represent Plaintiffs Railyard Brewing Company or Ringside Entertainment. . . To the extent that Plaintiffs Jaramillo and Duran continue to pursue claims in this lawsuit as *pro se* litigants, such representation shall be limited to their individual interests." *Jaramillo v. Frewing*, 2018 WL 3549822, at *3 (D.N.M.). Recently, District Court Judge James O. Browning adopted Judge Yarbrough's recommended findings and conclusions. *See Jaramillo v. Frewing*, 2018 WL 4092075 (D.N.M.).

RBC knew it could not respond to the Claim Objection pro se, but chose to try it anyway.

D.  <u>The Members' Response Should be Stricken</u>.

The appropriate remedy for the filing improper pro se pleadings is to strike them. *See, e.g., Commonwealth Biotechnologies, Inc. v. Fornova Pharmworld, Inc. (In re Commonwealth Biotechnologies, Inc.),* 2012 WL 5385632, at *1 (Bankr. E.D. Va.) (court struck all pleadings an individual filed on behalf of corporate defendant); *Lincoln Nat'l Life Ins. Co. v. Silver*, 2010 WL 11619311, at *4 (D.N.M.) (court granted motion to strike corporation's pro se pleadings); *Heizer v. Dent*, 2014 WL 12789693, at *4 (D.N.M.) (court struck plaintiff's trust's complaint because it was required to have counsel); *Sanchez v. Bonilla*, 2015 WL 12832339, at *2 (D.N.M.) (court granted

---

[7] After a two-day trial on the merits of the Lease Rejection Motion, the Court determined that the Lease Rejection Motion was well taken and should be granted.

plaintiff's motion to strike an LLC's pro se answer); *Gallegos v. Tygart*, 2015 WL 13667104, at \*1 (D.N.M.) (court struck defendant LLC's pro se challenge to jurisdiction and motion to dismiss); *Boilermaker-Blacksmith Nat'l. Pension Fund v. Chicago Boiler & Mech., Inc.*, 2006 WL 2228945, at \*1 (D. Kan.) (district court struck corporate defendant's pro se answer.).

The Court may strike the Response *sua sponte*. *See, e.g., NACM Tampa, Inc. v. Mensh*, 2016 WL 231328, at \*2 (M.D. Fla.), wherein the district court ruled:

> Accordingly, the Court directs Sunray Construction Notices, Inc. to obtain counsel by February 1, 2016. Failure to do so will result in an Order *sua sponte* striking Sunray Construction Notices, Inc.'s pleadings. If Sunray Construction Notices, Inc.'s pleadings are stricken, NACM Tampa, Inc. and NACM Services Corp. may file an application for the entry of Clerk's Default. If and when a Clerk's Default is entered against Sunray Construction Notices, Inc., NACM Tampa, Inc. and NACM Services Corp. may promptly move for entry of default judgment as to Sunray Construction Notices, Inc.

*See also Microsoft Corp. v. Computer Serv. & Repair, Inc.*, 312 F. Supp. 2d 779, 782 (E.D.N.C. 2004) (court *sua sponte* struck the corporate defendant's pro se motion to dismiss); *Trebor Indus., Inc. v. JL Gory, LLC*, 2009 WL 10682085, at \*1 (S.D. Fla.) (upon the failure of the defendant corporation to obtain legal representation, the court, *sua sponte*, without further notice or hearing, would strike all papers filed pro se by the corporate defendants).

Based on the above-cited case law and the facts of the matter, the Court concludes that the proper course is to strike the Response.

E.  <u>The Claim Objection Should be Sustained by Default</u>.

Under Rule 3007-1, "if no response is timely filed the court may disallow the claim as requested in the objection without further notice or a hearing." NM LBR 3007-1. Because RBC has not responded in the 100+ days since the Claim Objection was served, and in the three weeks since the Trustee asked the Court to grant relief because of RBC's failure to obtain counsel, it is proper for the Court to sustain the Claim Objection by default. *See generally In re SK Foods, LP*, 499 B.R. 809,

815-16 (Bankr. E.D. Cal. 2013) ("case law makes clear that entry of default is an appropriate remedy for an entity defendant's failure to be represented by counsel, where local rules so require," citing *Employee Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 998 (9th Cir. 2007); *United States v. High Country Broadcasting Co.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (affirmed district court entry of a default judgment because corporate defendant failed to retain counsel). *See also Jaramillo v. Frewing*, 2018 WL 4092075, at *5 (D.N.M.) (dismissing RBC's complaint because, among other things, it did not have counsel).

F.   The Claim Should be Disallowed in any Event.

Even if the Court were to consider the Claim Objection on the merits, the Claim would have to be disallowed. "When a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001. The Official Bankruptcy Proof of Claim Form instructs the filer to attach "redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statement of running accounts, contracts, judgments, mortgages, and security agreements." Official Bankruptcy Form 410. Elsewhere the form instructs the filer to attach "redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c)." The attachments to the Claim do not support these asserted bases and do not comply with Bankruptcy Rule 3001.

RBC asserts that the basis of the claim is "Investment in Real Estate, JV agreement, equipment, furnishings, fixtures, bowling equipment, improvements."

1.   Investment in Real Estate. RBC did not attach any deeds, mortgages, or other documents that might evidence an investment of real estate. Possibly, RBC intended to assert a claim

for money it invested in furniture, fixtures, and equipment for the Premises. If so, the assertion lacks merit; the Court has already ruled that the Debtor, rather than RBC, paid for that personal property. *See In re Railyard Co. LLC,* 562 B.R. 481, 486, n. 7 (Bankr. D.N.M. 2016). Further, the three years of projected lost profits might also be an attempt to claim breach damages. The single page spreadsheet, estimating lost profits for a business that never operated, is insufficient. Moreover, there is nothing to tie the alleged lost profits figure ($1,675,259) to the $6,771,000 claimed.

      2.      <u>JV Agreement</u>. RBC did not attach a "joint venture agreement" or anything similar to its Claim. The Court has no idea what "JV Agreement" refers to. If RBC alleges that it had a joint venture with the Debtor, RBC should have attached the agreement (or at least outlined its essential terms) and discussed how the alleged agreement related to the Claim amount.

      3.      <u>Equipment, furnishings, fixtures, bowling equipment, improvements</u>. As noted above, Debtor, rather than RBC, paid for and owned the furniture, fixtures, equipment, and improvements in the Leased Premises. Further, the financing statement attached to the proof of claim, which shows RBC as both the debtor and the secured party, does not document the Claim.

      4.      <u>RBC Balance Sheet</u>. A balance sheet for RBC is attached to the Claim, without explanation. The balance sheet shows a net worth as of October 31, 2016, of about $2,500,000. It is not clear what, if any, relationship the claimed net worth has to the Claim amount.

      In sum, RBC's Claim does not comply with Bankruptcy Rule 3001, does not give enough information to allow the Trustee or the Court to determine its validity, and is for such a large amount, with so little backup, that RBC's good faith must be questioned.[8] Even on the merits, therefore, the Claim should be disallowed.

---

[8] A person who files a fraudulent claim can be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C §§ 152, 157, and 3571.

III. CONCLUSION

RBC has had notice since at least 2016 that it must litigate in this Court through counsel. RBC ignored the rule and attempted to respond to the Trustee's Claim Objection pro se by pretending that the Members owned the Claim. The ploy does not work. The Court will strike the Response and sustain the Claim Objection by default. Furthermore, even if the Court were inclined to consider the Claim on its merits, it would have to be disallowed. The Claim lacks documentary support, is contrary to prior Court rulings, and does not represent a good faith attempt to quantify RBG's damages, if any, caused by rejection of the Lease. The Court will enter a separate order sustaining the Claim Objection.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 12, 2018

Copies to: counsel of record

Rick Jaramillo
215 Calle Roble
Santa Fe, NM 87501

David Duran
11 West Gutierrez
Box 3539
Santa Fe, NM 87504

Steve Duran
21 Entrada De Duran
Santa Fe, NM 87506

Raymond Archuleta
4901 Calle del Cielo NE
Albuquerque, NM 87111

Zack Vigil
8 Camino Delores
Algodones, NM 87001